UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KAREN L. MOWER,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                    Defendant. | Case No. 3:10-cv-05723-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 7, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On April 24, 2007, plaintiff filed an application for SSI benefits, alleging disability as of October 1, 2003, due to hepatitis C, cirrhosis of the liver, esophagus problems, degenerative disc disease, and ripped tendons in her knee, elbow and wrist. See Administrative Record ("AR") 10, 105, 115. Her application was denied upon initial administrative review and on reconsideration.

REPORT AND RECOMMENDATION - 1

See AR 10, 54, 59. A hearing was held before an administrative law judge ("ALJ") on October 7, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 19-51.

On October 30, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 10-18. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 30, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481. On October 4, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on January 24, 2011. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred in: (1) evaluating the medical evidence in the record; (2) assessing plaintiff's credibility; (3) assessing her residual functional capacity; and (4) finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

REPORT AND RECOMMENDATION - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

REPORT AND RECOMMENDATION - 3

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.     Dr. Deem

Plaintiff was examined in late June 2007, by Shirley Deem, M.D., who diagnosed her with hepatitis C, cirrhosis of the liver, polysubstance abuse, and nicotine dependence. See AR 183. In terms of functional capabilities, Dr. Deem opined that:

REPORT AND RECOMMENDATION - 4

> The number of hours this claimant can be expected to stand and walk in an eight-hour workday would probably be about four hours. She has limited endurance due to her rather end stage cirrhosis of the liver. I do not think that she can stand or walk any longer than approximately four hours doing productive work.
>
> The number of hours that the claimant could be expected to sit in an eight-hour workday would be for 6 to 8 hours, depending on her low back pain level.
>
> No assistive device is recommended.
>
> The amount of weight that she could lift and carry frequently would be 10 pounds. This is probably her limit, since she stated that she does have tendonitis and pain in her elbows with lifting and moving objects.
>
> I think that prolonged sitting and standing would be difficult because of her lumbar spine arthritis.
>
> She can perform reaching, handling, feeling, grasping, and fingering for short periods of time with frequent breaks.

Id. The ALJ summarized Dr. Deem's findings and conclusions as follows:

> . . . Dr. Deem's physical examination showed that the claimant's liver was palpated approximately 3 cm below the right costal margin. The claimant's joints had a full range of motion. Her grip was full and equal. She had no lack of sensation. The claimant's reflexes were 2+/4.
>
> Based on her examination, Dr. Deem reported that the claimant had hepatitis C, cirrhosis, degenerative joint disease of the back, and polysubstance abuse. Nevertheless, the claimant could stand and walk 4 hours in an 8 hour day. She could sit for 6 to 8 hours and lift and carry 10 pounds. She could reach, handle, feel, grasp and finger. Dr. Deem reported that she smelled of alcohol (Exhibit 3F, page 2).

AR 14-15.

Plaintiff argues the ALJ erred by failing to accurately summarize Dr. Deem's opinions. Specifically, she argues the ALJ failed to note Dr. Deem's opinions that: (1) prolonged sitting would be difficult for her; and (2) while she could perform reaching, handling, feeling, grasping, and fingering, she could only do so for short periods of time with frequent breaks. With respect

REPORT AND RECOMMENDATION - 5

to the issue with prolonged sitting, the undersigned agrees with defendant that this limitation is adequately addressed by the ALJ's determination that plaintiff would need "**an option of sitting or standing at will**." AR 13 (emphasis in original).  Given that Dr. Deem found plaintiff can be expected to sit for six hours in an eight-hour workday, and also can stand and walk for about four hours, an option to sit or stand at will would seem to allow for this.

On the other hand, the undersigned agrees with plaintiff that the ALJ did not adequately account for Dr. Deem's finding that she could perform reaching, handling, feeling, grasping, and fingering for short periods of time with frequent breaks. See AR 13 (determining plaintiff had unlimited abilities with respect to pushing and pulling and gross and fine finger dexterity).  In arguing the ALJ gave specific and legitimate reasons for discounting this limitation, defendant points to Dr. Deem's finding that plaintiff's grip was full and equal and comment that plaintiff smelled of alcohol. See AR 181-82.  But although the ALJ mentioned this finding in his decision (see AR 15), he did not state that he was rejecting the above limitations on these bases.  Nor can it reasonably be implied that the ALJ meant to do so, given that he did not even mention them in his decision, and thus it is unclear he actually considered them.[1]

Defendant further argues plaintiff's treating nurse, Margene Fields, A.R.N.P., completed a state agency physical evaluation form, in which she found plaintiff to be capable of performing sedentary work, which is defined therein to include "the ability to lift 10 pounds maximum and frequently[] lift and/or carry such articles as files and small tools." AR 284.  Again though, while the ALJ did mention the sedentary work finding in his decision, nowhere in that decision did the ALJ state he was basing his findings regarding plaintiff's ability to use her upper extremities on

---

[1] It also should be noted in regard to the issue of smelling of alcohol, that Dr. Deem commented that "what smelled like alcohol" on her breath, could just as well have been "acetone on her breath from having a metabolic imbalance." AR 181.

REPORT AND RECOMMENDATION - 6

that conclusion, nor can it reasonably be implied therefrom, particularly as the ALJ made no mention of the fact that Ms. Fields did not check any of the boxes in the form she completed indicating the presence of restrictions in plaintiff's ability to handle, push, pull, or reach. See AR 284.  Lastly, defendant fails to explain how the ALJ could give greater weight to the sedentary work finding, when, unlike Dr. Deem, Ms. Fields is not an "acceptable medical source" and did not perform her own independent examination of plaintiff.[2]

B.     Ms. Fields

Plaintiff argues the ALJ erred in failing to mention that in addition to finding her limited to performing sedentary work, Ms. Fields also found she had restrictions in balancing, bending, climbing, crouching, kneeling, and stooping. See AR 15, 284.  But the undersigned finds the ALJ adequately accounted for those restrictions in his decision.  Specifically, the ALJ determined that plaintiff could occasionally climb stairs, but was unable to climb ladders, ropes or scaffolds, and that she could occasionally bend, stoop, crouch, crawl, balance, twist, and squat. See AR 13.  As these limitations largely cover the restricted areas checked by Ms. Fields on her evaluation form, and since there is nothing in that form to indicate she believed plaintiff was restricted to a greater degree than found by the ALJ in his decision, plaintiff has failed to show any error on the part of the ALJ here.

C.     Jo Olson

Plaintiff next takes issue with the ALJ's following findings:

. . . [O]n July 13, 2007, Jo Olson, M.D., a State Agency Medical Consultant reviewed the claimant's medical records and completed a physical residual functional capacity assessment form concerning the claimant (Exhibit 4F, page 1).  Dr. Olson reported that the claimant could lift and carry 10 pounds

---

[2] See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996) (opinion source who is not "acceptable medical source" may be given less weight than those of acceptable medical sources); 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources").

REPORT AND RECOMMENDATION - 7

  occasionally and 5 pounds frequently, stand and walk about 2 hours in an 8
  hour day, and sit for at least 6 hours in an 8 hour day.

AR 15-16.  Plaintiff argues that because Jo Olson is not actually a medical doctor, the ALJ failed to accurately summarize this opinion evidence.  Defendant argues it is not clear from the record that Jo Olson is *not* a medical doctor.  But the undersigned agrees with plaintiff that the record is insufficient to show that she is such a medical source.  See AR 184-91.  Regardless, the findings and conclusions of Jo Olson were affirmed by Carol Hilby, M.D., who is a medical doctor.  See AR 198.  As such, the findings and opinions contained in the evaluation form completed by Jo Olson and affirmed by Dr. Hilby cannot be discounted on the basis that they were not provided by an acceptable medical source.

II.  The ALJ's Assessment of Plaintiff's Credibility

  Questions of credibility are solely within the control of the ALJ.  See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan , 242 F.3d at 1148.

  To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

REPORT AND RECOMMENDATION - 8

and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, the ALJ discounted plaintiff's credibility on the basis that her subjective complaints were inconsistent with the objective medical evidence in the record. See AR 14-15. It is true that an ALJ's determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). In addition, as discussed above, the ALJ's evaluation of the medical evidence in the record was largely without error, and the one area where he did err – with respect to the reaching, handling, feeling, grasping, and fingering limitations found by Dr. Deem – is not particularly relevant on the issue of plaintiff's credibility, since plaintiff did not allege disability on the basis of such limitations. See AR 25-27, 34, 115, 138.

As plaintiff notes, however, an ALJ cannot reject a claimant's pain testimony *solely* on the basis of a lack of medical evidence in the record. See Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (once claimant produces medical evidence of underlying impairment that is reasonably likely to cause some pain, claimant's pain testimony may not be discredited solely because degree of pain alleged is not supported by objective medical evidence). The same is true in regard to a claimant's other subjective complaints. See Byrnes v. Shalala, 60 F.3d 639, 641-42

REPORT AND RECOMMENDATION - 9

(9th Cir. 1995).  Accordingly, because the ALJ discounted plaintiff's credibility here solely on the basis of inconsistency with the medical evidence in the record, he erred.

Defendant argues the ALJ did provide other valid reasons for discounting the credibility of plaintiff, pointing out the ALJ also noted that plaintiff was not taking any medication for her degenerative disc disease or depression and engaged in certain activities of daily living. See AR 14; see also Smolen, 80 F.3d at 1284 (ALJ may consider claimant's daily activities); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for supposedly excruciating pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony").

It does not appear, however, that the ALJ actually based his credibility determination on these factors.  First, the ALJ only noted them in his general description of plaintiff's subjective complaints. See AR 13-14.  Second, the ALJ began his discussion of the reasons for not finding plaintiff to be entirely credible by expressly stating as follows: "In support of this [credibility determination], the [ALJ] notes that the objective clinical findings do not support [plaintiff's] alleged subjective symptoms or functional limitations." AR 14.   The ALJ then spent two pages discussing those discrepancies. See AR 14-15.  He concluded his credibility determination by citing a Fifth Circuit case for the proposition that an ALJ "may properly consider the objective medical evidence in testing credibility and finding the subjective complaints exaggerated."[3] AR 15 (citing Johnson v. Heckler, 767 F.2d 180 (5th Cir. 1985)).  Further, the standard employed by the Fifth Circuit here appears to be at odds with that adopted by the Ninth Circuit. See id. at 182; contrast with Byrnes, 60 F.3d at 641-42; Orteza, 50 F.3d at 749-50.

---

[3] Nor did the ALJ mention at all plaintiff not taking medication or any of her activities of daily living anywhere in this two-page discussion.

REPORT AND RECOMMENDATION - 10

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of" that process, the ALJ then must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity to:

> **. . . perform sedentary work . . . The claimant is able to lift and carry 10 pounds occasionally and 5 pounds frequently, with an option of sitting or standing at will. The claimant is able to walk 4 hours in an 8 hour workday. The claimant has unlimited abilities to push and pull and unlimited gross and fine dexterity. Although the claimant is able to occasionally climb stairs, she is unable to do any running or climbing of**

REPORT AND RECOMMENDATION - 11

**ladders, ropes, or scaffolds. The claimant is able to occasionally bend, stoop, crouch, crawl, balance, twist, and squat. Mentally, the claimant is able to get along with others, understand simple instructions, concentrate on and perform simple tasks, and respond and adapt to changes in the workplace and supervision.**

AR 13 (emphasis in original). Plaintiff argues the ALJ erred in so finding, because he erred both in evaluating the medical evidence in the record and in assessing plaintiff's credibility. Because the ALJ did err in failing to mention or discuss the limitations Dr. Deem found plaintiff had with respect to reaching, handling, feeling, grasping, and fingering, and in assessing the credibility of plaintiff for the reasons discussed above, it is not at all clear that the residual functional capacity with which the ALJ assessed plaintiff is completely accurate.

Plaintiff goes on to argue that the ALJ also erred in failing to include in his assessment of her RFC, a need to lie down periodically throughout the day, an inability to do any lifting, a need to change positions at will, and an inability to sit for more than 40 minutes at a time. All of these limitations appear to be based solely on plaintiff's own testimony, given that no medical opinion source in the record has assessed any such limitations. In addition, the need to change positions at will would appear to be adequately covered by the sit or stand at will option adopted by the ALJ. While, as discussed above, the ALJ failed to properly discount plaintiff's credibility, his largely proper evaluation of the medical evidence does not support such severe limitations in this case. Indeed, the limitations on reaching, handling, feeling, grasping, and fingering – the one area of the medical evidence in regard to which the ALJ did err – also do not indicate adoption of such limitations is warranted, at least not at this time.

IV.  The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national

REPORT AND RECOMMENDATION - 12

economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 47-48. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See id. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, namely that of call-out operator (Dictionary of Occupational Titles ("DOT") 237.367-014), charge account clerk (DOT 205.367-014), and table worker (DOT 739.687-182). See AR 16-17.

Plaintiff argues the hypothetical question the ALJ posed does not accurately describe her functional limitations. The undersigned agrees that for the same reasons it remains unclear that

REPORT AND RECOMMENDATION - 13

the ALJ's RFC assessment is completely accurate, so too is it not entirely clear the hypothetical question the ALJ posed also completely described plaintiff's limitations. As such, the ALJ erred here at step five as well. On the other hand, also for the same reasons, the undersigned finds the ALJ was not required to accept the vocational expert's testimony that an individual who needed to lie down during the day, would be unable to perform other jobs.

Plaintiff argues as well that it was improper for the ALJ to rely on the vocational expert's testimony on the basis that that testimony is not consistent with the description of the jobs the vocational expert identified, and the ALJ adopted, contained in the DOT. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). To that end, the ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between his or her testimony and information in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ must "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. In addition, the ALJ must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

Specifically, plaintiff asserts the ALJ's sit and stand option and the level of reasoning the DOT requires for the above jobs preclude her from being able to perform them. In terms of the sit and stand option, the undersigned agrees there appears to be an inconsistency here, as no discussion of one is contained in any of the DOT's descriptions of those jobs. See DOT 237.367-014, DOT 205.367-014, DOT 739.687-182. Further, the jobs of call-out operator and charge account clerk are both described by the DOT as requiring Level 3 reasoning, which is defined as:

REPORT AND RECOMMENDATION - 14

> Apply[ing] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal[ing] with problems involving several concrete variables in or from standardized situations.

See DOT 237.367-014, DOT 205.367-014;[4] DOT, Appendix C.  In this case, as noted above, the found plaintiff was able to understand simple instructions and concentrate on and perform simple tasks.  See AR 13.  But as the Tenth Circuit has noted, a limitation to simple and routine work is "inconsistent with the demands of level-three reasoning."  Hackett, 395 F.3d at 1176; see also Lucy v. Chater, 113 F.3d 905, 909 (8th Cir.1997).  The undersigned agrees that jobs requiring Level 3 reasoning are not compatible with a restriction to understanding simple instructions and concentrating and performing simple tasks.  Thus, because the ALJ did not ask the vocational expert about these discrepancies, he erred.

V.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."  Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

---

[4] The job of table worker requires Level 1 reasoning (defined as "[a]pply[ing] commonsense understanding to carry out simple one- or two-step instructions," and "[d]eal[ing] with standardized situations with occasional or no variables in or from these situations encountered on the job"), which plaintiff does not argue, and the undersigned does not find, is incompatible with a limitation to understanding simple instructions and concentrating on and performing simple tasks. DOT 739.3670182; see also AR 13; Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D.Cal. 2005) (finding limitation to performing simple and routine work to be commensurate with Level 2 reasoning (defined as "[a]pply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal[ing] with problems involving a few concrete variables in or from standardized situations"), and noting that "[a] reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required"); see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more compatible with limitation to simple and routine work).

REPORT AND RECOMMENDATION - 15

1   award of benefits is appropriate." Id.

2   Benefits may be awarded where "the record has been fully developed" and "further

3   administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

4   v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded

5   where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain with respect to the medical evidence in the record, plaintiff's residual

functional capacity and her ability to perform other jobs existing in significant numbers in the

national economy, remand for further administrative proceedings is warranted.

Plaintiff argues the ALJ should credit as true the findings of Dr. Deem. It is true that

where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or

examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at

834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on

crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the

Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th

Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's

limitations as established by improperly discredited evidence," the Ninth Circuit "consistently

[has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at

1116. Because it is not clear the ALJ is required to find plaintiff disabled based on the reaching,

handling, feeling, grasping, fingering limitations Dr. Deem assessed, and because the vocational

REPORT AND RECOMMENDATION - 16

expert did not address them, the credit as true rule should not be applied here.

It also is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[5] Because as discussed above, the medical evidence is not supportive of plaintiff's subjective complaints, it is far from certain that the credit as true rule is appropriate here as well. Accordingly, for all of the above reasons, the undersigned declines to do so.

### CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and thus should reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file

---

[5] In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id. It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

REPORT AND RECOMMENDATION - 17

1 objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 7, 2011**, as noted in the caption.

DATED this 22nd day of September, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18